UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RONALD ORTH, et al.,

        Plaintiffs,

  v.                                                          Case No. 07-C-149

WISCONSIN STATE EMPLOYEES UNION
COUNCIL 24, et al.

        Defendants.

**ORDER**

Following entry of an order finding the defendant liable and an interim order granting partial relief, the parties have now set forth their positions on the issues remaining. In particular, the plaintiffs want damages of some $7,239.41, plus interest, which represents the amounts they paid out-of-pocket to continue funding health insurance coverage after Mr. Orth's sick leave account dried up. Plaintiffs also want reasonable attorney's fees.

As to the first issue, the defendants portray the amounts Orth borrowed to cover his insurance premiums as consequential damages. And because such extracontractual damages are not allowed under ERISA, they argue Orths' payments cannot be recovered in these proceedings. *Harsch v. Eisenberg,* 956 F.2d 651, 656 (7th Cir. 1992). In support of this argument, the defendants rely largely on a case from this district in which the court found certain damages outside the bounds of available ERISA relief:

> The premiums that the Schlitz retirees paid to obtain replacement insurance do not fall under any of ERISA's categories of damages. Damages for the premiums paid to obtain replacement insurance are not benefits due under the terms of the plan (thus,

they are extracontractual), nor are they equitable relief. They are money damages-they are classic legal relief. They are not available under ERISA.

*Zielinski v. Pabst Brewing Co., Inc.,* 360 F. Supp. 2d 908, 923 (E.D. Wis. 2005).

While costs for *replacement* insurance might indeed be extracontractual – indeed, obtaining insurance not provided for in the applicable contract is, by definition, extracontractual – that is not what Orth seeks here. Instead, he simply wants his employer to reimburse him for the amounts it should have covered in the first place – the exact benefit provided for in the contract. There is thus nothing extracontractual about Orth's demand, a point the *Zielinski* court (citing the Fifth Circuit) makes crystal clear: "When a plan beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is [ERISA] § 502(a)(1)(B). Damages that would give a beneficiary more than he or she is entitled to receive under the strict terms of the plan are typically termed extracontractual." *Id.* at 922 n.13 (quoting *Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1335 (5th Cir. 1992)). Orth only wants what the contract provided, nothing more. Accordingly, I conclude Orth is entitled to cash reimbursement of the premiums he was wrongfully forced to pay: $7,239.41.[1] To account for the 90/10 split provided in the collective bargaining agreement, ten percent of that amount ($723.94) may be subtracted from the total amount the union deposits into Orth's sick leave account.

Orth also seeks an award of prejudgment interest. "Whether to award an ERISA plaintiff pre-judgment interest is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Fritcher v. Health Care Service Corporation,* 301 F. 3d 811,

---

[1] Because Orth's contractual damages are out-of-pocket, it would not make sense to order the defendant to deposit the sum Orth actually paid into a sick leave account that Orth may never fully exhaust.

2

820 (7th Cir. 2002). The amount of interest Orth seeks reflects the interest he incurred by taking out high-interest payday loans. Although that interest resulted from the defendants' ERISA violation, I cannot say in all fairness that it is incumbent upon the employer to fully compensate Orth under such circumstances. When a party takes action in the face of a legal challenge, it assumes the risk that it will need to make the other side whole if it loses, and the making-whole process could entail an award of interest to compensate the winner for inflation and the lost opportunity to employ his capital. But in this case, the considerable interest expenses at issue here (some $1000 in interest on $7200 borrowed *this* year) flowed not so much from the defendants' actions as from Orth's own decision to obtain nonstandard financing. Indeed, the mere fact that Orth decided to borrow the money at all is not really within the control of the defendant, and thus not part of its risk calculus. Ultimately, allowing a plaintiff's own idiosyncratic choice of financing to control the award of damages would lead to inefficiencies and unpredictability. Thus, I conclude an award of interest at the prime rate will suffice to ensure that Orth is fairly compensated without placing the onus of unexpected atypical interest expenses upon the union. *Fritcher,* 301 F.3d at 820.

As for attorney's fees, the defendants argue that I should exercise my discretion and not award fees because the dispute was a *bona fide* good faith disagreement. Under ERISA § 502(g), a court has the discretion to award attorney's fees to the prevailing party. 29 U.S.C. § 1132(g). And, under Seventh Circuit precedent, "district courts entertain a 'modest presumption' that prevailing parties are entitled to a reasonable attorneys' fee." *Bowerman v. Wal-Mart Stores, Inc.,* 226 F.3d 574, 592 (7th Cir. 2000). Though there are a number of factors and tests that enter into

3

the mix, "the question asked is essentially the same: '[W]as the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?'" *Id.* at 593.[2]

To be sure, the dichotomy proposed in that question – "good faith" versus "harassment" – does not account for the gray area in which many cases resolve themselves. A loser argument may be a clear loser without necessarily being offered in bad faith or with harassing intent. Moreover, the notion of harassment would seem to have little place when the loser is the defendant: while a weak argument asserted by a plaintiff may indeed have a harassing effect (forcing the defendant to hire a lawyer and defend a fruitless lawsuit), it is more difficult to find "harassment" when the losing party is playing defense.

In any event, I am persuaded that equity requires an award of attorney's fees in this case. Although the union is correct that there is no inkling of bad faith, its arguments for denying benefits flew in the face of what I concluded was clear contractual language. Thus, in considering the "relative merits of the parties' positions," I found the case to be rather one-sided in the Orth's favor. *Filipowicz,* 56 F.3d at 816. Put another way, while the defendants were not out to harass the plaintiffs, I did not find their position "substantially justified." *Bowerman,* 226 F.3d at 593. Given my conclusions on the merits of the case, as well as the mild presumption in favor of a fee award,

---

[2]Other factors may include: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the plan as a whole; and 5) the relative merits of the parties' positions. *Filipowicz v. American Stores Benefit Plans Comm.,* 56 F.3d 807, 816 (7th Cir.1995).

4

I conclude that an award of reasonable attorney's fees is justified. Orth should submit a motion for attorney's fees under Rule 54(d)(2) within fourteen days and include a statement indicating fees reasonably incurred.[3]

For the reasons given above and in previous rulings, **IT IS ORDERED** that the motion for relief is **GRANTED**, and judgment will be entered as follows:

1. Defendant Wisconsin State Employees Union ("WSEU"), Council 24, shall pay Plaintiffs the sum of $7,239.41, plus compound interest at the prime rate.

2. Defendant WSEU Council 24 shall re-credit Plaintiff Ronald Orth's sick leave conversion account in the amount of $35,963 representing the difference between his original balance of $42,038 and his 10% share of the premiums paid from the date of Orth's retirement in 1998 through December 31, 2006. WSEU Council 24 may withhold or withdraw $723.94 from such account to account for Orth's share of premiums during the January-July 2007 period when Orth paid the full premiums himself.

3. Beginning with the July, 2007 premium payment, and for each month thereafter until Orth's sick leave conversion account is fully exhausted, Defendant WSEU Council 24 will finance Plaintiffs' share of their health insurance premiums by charging Orth's sick leave conversion account for 10% of the total monthly premium. In addition, for each such month, Defendant WSEU Council 24 will pay the remaining 90% of Plaintiffs' health insurance premiums.

4. Beginning on October 1, 2007 and on or about the first day of every succeeding January, April, July and October thereafter until Mr. Orth's sick leave conversion account is fully exhausted,

---

[3]To head off any potential disputes requiring court involvement, the parties are urged to consult with each other before Orth submits this statement. Along with the statement, Orth should state whether the defendants object to the amount sought.

5

Defendant WSEU Council 24 will provide Plaintiffs with a quarterly statement which reflects the then-current balance of Orth's sick leave conversion account as well as every charge made to that account since the preceding statement.

5. Nothing within this judgment should be construed to prohibit Defendant WSEU Council 24 from changing the terms of the health insurance plan covering Plaintiffs. Defendant WSEU Council 24 will provide Plaintiffs with timely notice of any and all material changes to the plan, including, but not limited to, all changes in premiums, benefits provided, and claims procedures.

Dated this 11th day of July, 2007.

     /s William C. Griesbach
William C. Griesbach
United States District Judge